UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LLOYD J. (JIM) TAYLOR, individually and as assignee of LARRY GREEN,

  Plaintiff,

  v.

SENTRY GROUP OF COMPANIES, an entity or joint venture, SENTRY INSURANCE, a foreign corporation, any SENTRY company responsible for claims (well known to the other defendants and not well known to Plaintiffs) and DAIRYLAND INSURANCE COMPANY, a foreign insurer,

  Defendants.

Case No. C06-5497 RBL

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

    This action for insurance bad faith and violation of Washington's Consumer Protection Act comes before the Court on cross-motions for summary judgment. After reviewing all materials submitted by the parties and relied upon for authority, the Court is fully informed and hereby denies Plaintiff's motion for summary judgment and grants Defendants' motion for summary judgment. The action is dismissed, with prejudice.

ORDER - 1

**STATEMENT OF FACTS**

On November 9, 2000, Lloyd Taylor was rear-ended by an automobile driven by Larry Green. As a result of the collision, Mr. Taylor suffered severe and potentially life threatening injuries. He was hospitalized for months and received approximately $200,000 in medical treatment, paid by Medicaid through the Washington Department of Social and Health Services (DSHS). Mr. Taylor initially retained attorney Mark Watson to represent him in his claims arising out of the accident.

Larry Green was insured by Dairyland Insurance, a member of the Sentry Group of Companies (Sentry). Mr. Green's insurance had policy limits of $25,000. On December 6, 2000, Mr. Watson sent a letter of representation to Sentry to which Sentry responded on December 11, 2000. Sentry offered to tender its limits of $25,000 to Mr. Taylor. By letter dated December 13, 2000, Mr. Watson stated that Mr. Taylor would tentatively accept the policy limits offer contingent upon, among other things, the rejection or acceptance of buyout rights by his underinsured motorist carrier. Mr. Watson requested Sentry forward a check in the amount of the Dairyland policy limits made payable to Mr. Taylor and himself, along with a certification of the policy limits. On March 26, 2001, Sentry sent the check and an accompanying release to Mr. Taylor's counsel, which was received by Mr. Watson's office on March 30, 2001.

On May 7, 2001, DSHS advised Mr. Watson that it would not compromise its Medicaid lien on Mr. Taylor's recovery of policy limits. Subsequent to this development, the attorney-client relationship between Mr. Taylor and Mr. Watson deteriorated, and on July 6, 2001, Mr. Watson wrote his client formalizing the termination of his representation of Mr. Taylor. In this letter, Mr. Watson further confirmed that he had been instructed to return to Sentry the tendered policy limits.

On November 14, 2001, Mr Watson returned Sentry's check of $25,000 policy limits and advised Sentry that he no longer represented Mr. Taylor. Mr. Watson enclosed a lien for $8,841.64 for his services to Mr. Taylor. No explanation was provided as to the basis for rejection of the tender of policy limits.

ORDER - 2

1    Sentry then wrote Mr. Taylor on December 3, 2001, indicating that they had received notice
2 from Mr. Watson that he no longer represented Mr. Taylor.  Sentry indicated that DSHS had filed a
3 medical lien which would encompass the entire policy limits and that an attorney lien had been filed by
4 Mr. Watson.  The letter indicated that a release would be necessary for Sentry to disburse the funds
5 to DSHS and Mr. Watson.  Sentry told Taylor a release would be forwarded and upon return receipt
6 of the signed release the funds would be distributed to the lien holders.  After receiving no response,
7 Sentry contacted Mr. Taylor by phone.  Mr. Taylor stated he disagreed with the disbursement to the
8 lien holders and refused to sign the release.  Sentry then wrote to all interested parties on December
9 21, 2001, indicating that it was authorized to pay a settlement of $25,000 to Mr. Taylor, but that the
10 DSHS lien exceeded this amount, and that Mr. Taylor refused to sign a release of the their insured,
11 Mr. Green.  The letter indicated that until all parties agree, Sentry could not make a distribution.

12    On December 28, 2001, Mr. Watson initiated a lawsuit against Mr. Taylor to recover attorney
13 fees claimed due and owing for his representation of Mr. Taylor regarding the November 9, 2000
14 accident with Sentry's insured, Larry Green.  Attorney Dan Albertson accepted Mr. Taylor's defense
15 pro bono in this attorney fee dispute.  Mr. Albertson informed Sentry of his representation and further
16 advised that DSHS would not waive or compromise its lien and that he did not want anything done
17 until the fee dispute was resolved.  Watson subsequently joined DSHS as a defendant to the fee
18 dispute.  Watson filed a notice of nonsuit and the case was dismissed on June 7, 2002.

19    On July 22, 2002, DSHS sent Sentry a letter requesting remittance of its subrogation claim to
20 the insurance proceeds by honoring its lien claim of $201,932.82.  In subsequent conversations
21 between Sentry claims representative Mike Brewer and DSHS, Sentry reiterated its position that a
22 release of Mr. Green from liability was required from Mr. Taylor before the insurance proceeds could
23 be distributed**.**  On December 9, 2002, DSHS, through an assistant attorney general, sent Sentry a
24 settlement agreement signed by the assistant attorney general on behalf of DSHS and signed by Mr.
25 Watson**.**  DSHS included a medical reimbursement work sheet and an assignment by Mr. Taylor to

26  ORDER - 3

DSHS of his rights to third party payments to pay for any covered medical care.  The settlement provided that Mr. Watson would receive $3,728.66 and DSHS $21,271.34 as full consideration of their respective liens against Dairyland Insurance and its insured, Larry Green.  Larry Green and Dairyland were also to be released from all claims arising out of the automobile accident.  The settlement agreement was not signed by Mr. Taylor.  Sentry sought advice from its Washington counsel and faxed them a copy of the settlement documents.  Washington counsel indicated it was appropriate to pay in accordance with the settlement.  In January 2003, Sentry released the policy limits to DSHS to be distributed as set forth in the settlement agreement.

Thereafter, unaware of the settlement, Mr. Taylor retained attorney Rod Ray to represent him in his claim against Larry Green.  Mr. Ray states he telephoned the original Sentry claims representative and left a message requesting payment of policy limits.  Getting no response, Mr. Ray filed suit against Larry Green on November 5, 2003, just days prior to the running of the statute of limitations.

The lawsuit required Sentry to reopen Mr. Taylor's claim.  On November 13, 2003, counsel was retained by Sentry to defend the lawsuit and protect the interest of their insured, Larry Green.  In answer to the complaint Defendant Green asserted that the Taylor assignment to DSHS and the release executed by DSHS released Mr. Taylor's claims against Mr. Green.  Plaintiff's counsel disputed this assertion and  indicated to Sentry that they considered the policy limits open.  Because of concerns over the validity of the DSHS assignment/release, Sentry's senior litigation adjuster, Joe Duffy, took over the claim file. Mr. Duffy determined a mistake had been made in not obtaining Mr. Taylor's consent to the settlement.  Mr. Duffy recommended Mr. Green's policy limits be reinstated.  On January 28, 2005, Mr. Duffy telephoned Mr. Green and advised him that Sentry was replacing the $25,000 limits of his policy.  On January 31, 2005, Sentry offered the reinstated policy limits of $25,000 to Mr. Taylor.  Believing that Mr. Green now had a bad faith claim against his insurer, Mr. Taylor rejected the tender of policy limits.

ORDER - 4

On February 2, 2005, Sentry substituted new defense counsel for Mr. Green and instructed counsel to vigorously defend Mr. Green. Subsequent to unsuccessful mediation, and on the eve of trial, and on the advise of defense counsel, Mr. Green settled with Mr. Taylor for an agreed judgment of $850,000. Green assigned his rights against Sentry to Taylor in exchange for a covenant not to execute from Taylor. The settlement amount was determined reasonable by the trial court.

Lloyd Taylor, as assignee of Mr. Green, then commenced the instant bad faith action against Sentry. Plaintiff contends that subsequent to termination of his representation by Mark Watson, Sentry failed to investigate or pursue with the claimant available options to release its insured and inappropriately paid policy limits to the lien holders without authorization of the claimant. Plaintiff contends that he was opposed to his fired-counsel, Mark Watson, receiving any of the proceeds of a settlement and had Sentry investigated or pursued this option with claimant, Mr. Taylor would have consented to a settlement for policy limits and release of the insured. Sentry does not dispute that an error was made in paying its limits without obtaining a release from its insured. Sentry maintains, however, that this payment was made in good faith, albeit mistaken, and that it attempted in good faith to effectuate a fair and equitable settlement for the insured's policy limits. Sentry further asserts that there does not exist a genuine issue of material fact and it is clear that the insured was not damaged by Sentry's conduct.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the opposing party must show that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute as to a material fact is

ORDER - 5

"genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The opposing party may not rest upon the mere allegations or denials of the moving party's pleading, but must present significant and probative evidence to support its claim. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  For purposes of this motion, reasonable doubts as to the existence of material facts are resolved against the moving party and inferences are drawn in the light most favorable to the opposing party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is mandated where the facts and the law will reasonably support only one conclusion.

Whether the insurer acted in bad faith is a question of fact. Smith v. Safeco Ins. Co., 150 Wn.2d 478, 484, 78 P.3d 1274 (2003).  An insurer is therefore entitled to a dismissal on summary judgment if, after viewing the facts in the insured's favor, a reasonable person could only conclude that the insurer's actions were reasonable. Smith, at 484-86; Liberty Mutual Ins. Co., v. Tripp, 144 Wn.2d 1, 23-24, 25 P.3d 997 (2001); Rizzuti v. Basin Travel Service of Othello, Inc. 125 Wn. App. 602, 615, 105 P.3d 1012 (2005).  Alternatively, because harm is an essential element, summary judgment in favor of the insurer is appropriate if a reasonable person could only conclude that the insured suffered no harm. Werlinger v. Clarendon Nat. Ins. Co., 129 Wn. App. 804, 808, 120 P.3d 593 (2005).  Accordingly, an insurer is entitled to a dismissal on summary judgment of the insured's bad faith claim where there are no disputed facts pertaining to the reasonableness of the insurer's conduct under the circumstances and the insurer is entitled to prevail as a matter of law. American States Ins. Co. v. Symes of Silverdale, Inc., 150 Wn.2d 462, 470, 78 P.3d 1266 (2003).

## TORT OF BAD FAITH

An insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith. Smith v. Safeco Ins. Co., 150 Wn.2d 478, 484, 78 P.3d 1274 (2003).

ORDER - 6

1  Claims by insureds against their insurers for bad faith are analyzed applying the same principles as any
2  other tort: duty, breach of that duty, and damages proximately caused by any breach of duty. Smith,
3  at 485; Werlinger v. Clarendon Nat. Ins. Co., 129 Wn. App. 804, 808, 120 P.3d 593 (2005).  The tort
4  of bad faith has been defined as a breach of the obligation to deal fairly with an insured, giving equal
5  consideration to the insured's interests. Anderson v. State Farm Mut. Ins. Co., 101 Wn. App. 323,
6  329, 2 P.3d 1029 (2000).  The duty of good faith owed by an insurer to its insured is statutory.  "The
7  business of insurance is one affected by the public interest, requiring that all persons be actuated by
8  good faith, abstain from deception, and practice honesty and equity in all insurance matters." RCW
9  48.01.030; Anderson, at 329.  To succeed on a bad faith claim, the policyholder must show the
10 insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded. Smith, at 484;
11 Overton v. Consol. Ins. Co., 145 Wn.2d 417, 433, 38 P.3d 322 (2002).  The duty to act in good faith
12 is broad and may be breached by conduct short of intentional bad faith or fraud, although not by a
13 good faith mistake. Anderson, at 329; Rizzuti v. Basin Travel Service of Othello, Inc., 125 Wn. App.
14 602, 615, 105 P.3d 1012 (2005).  A reasonable basis for denial of an insured's claim constitutes a
15 complete defense to any claim that the insurer acted in bad faith or in violation of the Consumer
16 Protection Act. Shields v. Enterprise Leasing Co., 139 Wn. App. 664, 676, 161 P.3d 1068 (2007);
17 Dombrosky v. Farmers Ins. Co., 84 Wn. App. 245, 260, 928 P.2d 1127 (1996).  The insured may not
18 base a bad faith or CPA claim on an insurer's good faith mistake, which occurs when the insurer acts
19 honestly, bases its decision on adequate information, and does not overemphasize its own interest.
20 Werlinger, at 808; Griffin v. Allstate Ins. Co. 108 Wn. App. 133, 143-44, 29 P.3d 777 (2001).
21 "[I]nsurance companies, like every other organization, are going to make some mistakes.  As long as
22 the insurance company acts with honesty, bases its decision on adequate information, and does not
23 overemphasize its own interests, an insured is not entitled to base a bad faith claim or CPA claim
24 against its insurer on the basis of a *good* faith mistake." Coventry Assocs. v. Am. States Ins. Co.,
25
26  ORDER - 7

136 Wn.2d 269, 280, 961 P.2d 933 (1998).  The determinative question is reasonableness of the insurer's actions in light of all the facts and circumstances of the case.  Anderson, at 329-30; Shields, at 676.

As demonstrated by the facts, Sentry promptly tendered its insured's policy limits upon notification of the claim.  At no time did Sentry deny its insured coverage, nor did it fail to provide a defense to Mr. Taylor's claim.  It is Plaintiff's contention, nonetheless, that Sentry committed bad faith in its conduct in attempting to settle the claim.

The Washington Insurance Commissioner has promulgated regulations that define specific claims settlement practices that constitute a breach of an insurer's duty of good faith.  RCW 48.30.010; WAC 284-30-300 ; American Manufacturers Mut. Ins. Co. v. Osborn, 104 Wn. App. 686, 697, 17 P.3d 1229 (2001).  Under WAC 284-30-330(6), it is an unfair or deceptive act or practice in the business of insurance in "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

Plaintiff has failed to identify a genuine issue of material fact that Sentry refused to attempt in good faith to effectuate a prompt, fair and equitable settlement.  As previously noted, Sentry promptly tendered policy limits upon notice of the claim.  Subsequently, upon rejection of the tender and having received notice of the DSHS and Watson liens, Sentry made another tender that provided the policy limits would be allocated to the lien holders, as the DSHS lien exceeded the amount of policy limits.  The tender provided that if there were any questions concerning the offer, claimant should call the Sentry claims representative.  Mr. Taylor again rejected the tender.  Mr. Taylor did not indicate the basis for rejection was the proposed payment of a portion of insurance proceeds to satisfy the Watson lien.  Later, afer mistakenly making payment to the lien holders without Mr. Taylor's release, Sentry reinstated the policy limits to protect its insured and a tender of policy limits was again offered to Mr. Taylor and refused.

ORDER - 8

Plaintiff argues that had Sentry conducted a more through investigation it would have determined that had Sentry not proposed to pay the Watson lien, Mr. Taylor would have settled for policy limits and released the insured. There is no evidence to support this contention. Throughout the settlement process and upon each tender of policy limits, Mr. Taylor had the ability and opportunity to state his reasons for objection to the offer of policy limits. He did not. The inability to ascertain Mr. Taylor's unstated reasons for rejection of policy limits does not constitute bad faith. Sentry admits it made a mistake in paying the liens without obtaining a release of its insured from the claimant, but this mistake does not make Sentry's effort to effectuate a prompt, fair, and equitable settlement unreasonable, frivolous, or unfounded. From the outset of the claim, it appears Sentry was willing to make a prompt, fair and equitable settlement with the claimant, Mr. Taylor. Sentry cannot, under these facts, be faulted for not discovering Mr. Taylor's unstated basis for rejection of settlement in the amount of policy limits. Under the circumstances of this action, there are no disputed facts pertaining to the reasonableness of the insurer's conduct and, thus, Sentry is entitled to summary judgment on the claim of bad faith.

## CONSUMER PROTECTION ACT

Plaintiff also alleges a violation of the Washington Consumer Protection Act (CPA). The CPA provides that unfair or deceptive acts in the conduct of trade or commerce are unlawful. RCW 19.86.020. To prevail on a CPA claim, a plaintiff must prove: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and (5) which injury is causally linked to the unfair or deceptive act. Rizzuti v. Basin Travel Service of Othello, Inc., 125 Wn.App. 602, 621, 105 P.3d 1012 (2005); Industrial Indem. Co. v. Kallevig, 114 Wn.2d 907, 920-21, 792 P.2d 520 (1990). In the insurance context, the elements of a CPA claim and the tort of bad faith are similar. American Manufacturers Mut. Ins. Co. v. Osborn, 104 Wn.App. 686, 697, 17 P.3d 1229 (2001). Any act that qualifies as an

ORDER - 9

1  unfair insurance claims settlement practice in the pertinent regulations constitutes a per se unfair trade

2  practice impacting public interest under the Consumer Protection Act (CPA).  RCW 19.86.020; WAC

3  284-30-330; Rizzuti, at 621; James E. Torina Fine Homes, Inc. v. Mut. of Enumclaw Ins. Co., 118

4  Wn.App. 12, 20-21, 74 P.3d 648 (2003).  Under W.A.C. § 284-30-330(6), not attempting in good

5  faith to effectuate prompt, fair and equitable settlements of claims in which liability has become

6  reasonably clear is an unfair or deceptive act or practice.

7       As previously addressed, however, Plaintiff has failed to create a material issue of fact

8  supporting a violation of the unfair practices regulations.  Plaintiff has failed to raise a material issue

9  of fact supporting a CPA claim.

## NEGLIGENCE

11       Plaintiff frames his complaint to allege a separate cause of action in negligence.  Negligence is

12  actionable only if public policy imposes a duty, the duty is breached, and the breach proximately

13  causes damage to the claimant.  Northwest Independent Forest Mfrs. v. Department of Labor and

14  Industries, 78 Wn.App. 707, 712-13, 899 P.2d 6 (1995).  A cause of action for negligence requires

15  the plaintiff to establish four elements: (1) the existence of a duty owed; (2) breach of that duty; (3)

16  injury resulting from that breach; and (4) a proximate cause between the breach and the injury.

17  Tincani v. Inland Empire Zoological Soc., 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994).  The

18  existence of a duty may be predicated upon statutory provisions or on common law principles.  When

19  no duty of care exists, a defendant cannot be subject to liability for negligent conduct.  Webstad v.

20  Stortini, 83 Wn.App. 857, 865, 924 P.2d 940 (1996).  An insurer has a duty of good faith to its

21  policyholder and violation of that duty may give rise to a tort action for bad faith.  Smith v. Safeco

22  Ins. Co., 150 Wn.2d 478, 484, 78 P.3d 1274 (2003).  This is the same duty addressed in the cause of

23  action for breach of the duty of good faith (bad faith).  Accordingly, no separate action for negligence

24  exist outside the context of the bad faith claim.

25

26  ORDER - 10

## CONCLUSION

The ultimate question is whether Sentry acted in bad faith in handling the claim. For the above stated reasons, Plaintiff has failed to raise a genuine issue of material fact that Sentry acted in bad faith or did not attempt to effectuate a prompt, fair, and equitable settlement. Defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied.

ACCORDINGLY;

IT IS ORDERED:

1. Defendants' Motion for Summary Judgment of Dismissal [Dkt #15] is **GRANTED**.

2. Plaintiff's Motion for Partial Summary Judgment [Dkt #18] and Plaintiff's Motion for Complete Summary Judgment of Liability through Coverage by Estoppel [Dkt. #20] are **DENIED**.

3. Plaintiff's causes of action are dismissed, with prejudice.

DATED this 15th day of November, 2007.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE